IN THE UNITED STATES DISTRICT COURTS
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TERESA WILLIS o/b/o                                             PLAINTIFF
AALIYAH M. FOSTER

    v.                                CIVIL NO. 05-4037

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                   DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Teresa Willis, brings this action on behalf of her minor child, Aaliyah, seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Commissioner of the Social Security Administration (Commissioner), denying Aaliyah's application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

**I. Background:**

Plaintiff filed an application for SSI on Aaliyah's behalf on July 29, 2003, alleging that Aaliyah was disabled due to tracheoesophageal fistula repair with gastrostomy. (Tr. 13, 45-47). An administrative hearing was held on December 9, 2004. (Tr. 143-167). Plaintiff was present and represented by council. At the time, Aaliyah was one year and four months old. (Tr. 148).

The Administrative Law Judge ("ALJ"), in a written decision dated February 24, 2005, found that Aaliyah's tracheoesophageal fistula repair with gastrostomy was a severe impairment. However, he concluded that Aaliyah had no limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself, with less than marked limitations in the area of health and physical well-being. (Tr. 17). As such, the ALJ determined that Aaliyah's impairment did not meet,

medically equal, or functionally equal any listed impairment. (Tr. 18-19).

On April 28, 2005, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the matter is now ready for decision. (Doc. # 7, 8).

**II. Evidence Presented:**

Aaliyah was born on July 17, 2003, at thirty-eight weeks gestation, due to fetal distress. (Tr. 94). At the time of birth, Aaliyah had "wet" lungs and a dilated proximal esophageal pouch. (Tr. 94). She was immediately transferred to Arkansas Children's Hospital ("ACH"). Upon admission, Dr. Billy Burns reported that Aaliyah's chest x-ray did not show any significant problems. (Tr. 80). In fact, she was noted to be stable, with essential resolution of her respiratory problems. (Tr. 80). However, a barium esophagram revealed a tracheoesophageal fistula with the proximal esophagus ending in a blind pouch. (Tr. 92). Thus, the following day, Aaliyah underwent a tracheoesophageal repair and G-tube placement. (Tr. 94). On July 24, 2003, a barium swallow showed an anastomotic leak. Tube feedings through her G-tube were reinitiated on August 4, 2003. Two days later, Aaliyah underwent an upper GI that revealed no further leaking at the anastomotic site. Slow oral feedings were restarted on the fourteenth day following surgery, supplemented by G-tube feedings. However, on August 18, 3003, a repeat upper GI showed a small anastomotic leak and mild narrowing at the anastomosis. By August 23, 2003, this leak had again decreased to a minimal leak. (Tr. 95). Thus, on August 30, 2003, Aaliyah was discharged home in good condition. (Tr. 95).

On September 13, 2003, Aaliyah was treated for coughing and congestion. (Tr. 96). The doctor diagnosed Aaliyah with an upper respiratory infection. (Tr. 98). Her respirations were

2

unlabored and her chest x-ray was normal. (Tr. 99). Therefore, plaintiff was advised to frequently suction Aaliyah with a nasal syringe. (Tr. 96). She was also directed to give her salve drops. (Tr. 96).

On September 16, 2003, ACH medical records showed that the Aaliyah had more than adequate weight gain. (Tr. 122). Dr. Charles Wagner noted that Aaliyah was feeding without any swallowing or breathing difficulties, coughing, or spitting. (Tr. 122-123). In fact, her examination was "completely unremarkable." (Tr. 123). Aaliyah did, however, receive medication for her reflux.

On September 26, 2003, Aaliyah saw Dr. Wagner due to vomiting. (Tr. 120). An examination revealed a one centimeter defect at the gastrostomy tube site. (Tr. 119). Dr. Wagner noted that Aaliyah's barium swallow showed no stricture and, as such, adjusted her reflux medications to her current weight. (Tr. 119).

On October 22, 2003, Aaliyah underwent surgery to repair her umbilical and ventral hernias. (Tr. 117). She was removed to the recovery room in stable condition. (Tr. 118). Plaintiff testified that she knew of no problems that resulted from Aaliyah's hernia removal. (Tr. 156).

On November 7, 2003, Dr. Stephen Whaley, a non-examining, consultative physician, completed a childhood disability evaluation form. (Tr. 100-105). After reviewing Aaliyah's medical records, he concluded that she had no limitations in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself, as no allegations were made regarding limitations in these areas. (Tr. 102-103). Further, he found less than marked limitations in the area of health and physical well-being, due to Aaliyah's tracheoesophageal fistula repair. (Tr. 103).

On December 5, 2003, the Aaliyah was treated for a cough and runny nose. (Tr. 110). She

3

was diagnosed with acute bronchitis, following a normal chest x-ray. (Tr. 110, 112). The doctor then released her home with prescriptions for Cardec, Amoxil, and Albuterol. (Tr. 107).

On December 10, 2003, plaintiff complained to Dr. Burns that Aaliyah continued to have frequent regurgitation around the incision site ,and that purulent fluid was expressed with gentle pressure from the granuloma. He prescribed a six month trial of Reglan. (Tr. 114).

On March 4, 2004, Dr. Thomas Smith, another non-examining, consultative physician, completed a childhood disability evaluation form. (Tr. 125-132). After reviewing her medical records, he concluded that Aaliyah had no limitations in the areas of acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for herself. (Tr. 127-128). Dr. Smith did, however, find less than marked limitations regarding Aaliyah's health and physical well-being. (Tr. 128).

On April 16, 2004, Aaliyah was reported to be quite large for her age, weighing in at over twenty-eight pounds. (Tr. 134). She was experiencing a cough and nasal congestion, but no fever. Records indicated that Aaliyah was now teething. The doctor diagnosed her with an upper respiratory infection and eczema. (Tr. 134-135). Aaliyah's grandmother was told to use Vick's Vapor Rub, frequently suction her nose using nasal saline spray, give her Dimetapp, and use a cool mist humidifier and Vapor Bath. For the eczema, he recommended that the grandmother continue applying Vaseline twice per day, use Eucerin cream, and bathe her in Aveeno Body Wash. (Tr. 435).

On May 18, 2004, plaintiff was advised not to overfeed the infant. (Tr. 139). Dr. Wagner noted that Aaliyah's lungs were clear to auscultation bilaterally with the exception of some transmitted upper airway noise. (Tr. 134).

On July 19, 2004, Aaliyah was suffering from a cough, fever, vomiting, and a runny nose.

AO72A
(Rev. 8/82)

(Tr. 438). Her eczema was also still present. Following an abnormal examination, Aaliyah was diagnosed with otitis media and eczema. The doctor prescribed Amoxicillin, Polytussin DM, Elidel, and the use of Vaseline or a moisturizer. He also educated plaintiff regarding the necessity not to overfeed Aaliyah (Tr. 438).

### III. Discussion:

The court's review is limited to whether the decision of the Commissioner to deny benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

In determining the plaintiff's claim, the ALJ followed the sequential evaluation process, set forth in 20 C.F.R. § 416.924. Under this most recent standard, a child must prove that she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(c)(i); 20 C.F.R. § 416.906.

When passing the law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability

5

benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).

Consequently, under this evaluation process, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is an impairment that is more than a slight abnormality. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(c). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings, will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d). Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified

6

domains. *See* 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to an impairment in the Listings. *See* 20 C.F.R. § 416.926a(d). A marked limitation is defined as an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2). An extreme limitation is defined as "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *See* 20 C.F.R. § 416.926a(e)(3). The ALJ determined that the facts in this case suggest Aaliyah had "less than marked"[1] limitations in the area of health and physical well-being, with no limitations in the remaining five domains. (Tr. 12-13).

---

[1] We will find that you have a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. 20 C.F. R. § 416.926a(e).

AO72A
(Rev. 8/82)

First, the ALJ found that Aaliyah had no limitations with regard to acquiring and using information. (Tr. 16). In making this determination the ALJ pointed out that a May 18, 2004 progress note indicated that Aaliyah was appropriate for all developmental stages. (Tr. 140). Further, he noted that plaintiff made no allegations concerning limitations in this area of functioning. Accordingly, we find substantial evidence supports the ALJ determination regarding this domain of functioning.

With regard to attending and completing tasks, the ALJ found Aaliyah had no limitations. (Tr. 16). Again, the ALJ noted that there were no allegations made regarding any limitations in this area of functioning. As we can find no evidence to indicate any limitations within this domain, we find that the evidence supports that ALJ's finding of no limitations.

The ALJ also found Aaliyah had no limitations with regard to interacting and relating with others. (Tr. 16). Plaintiff failed to allege any limitations regarding Aaliyah's ability to relate to others. In fact, she testified that plaintiff was in the process of learning how to talk and that she knew her own name. (Tr. 151). Therefore, we find substantial evidence supporting the ALJ's determination that she had no limitations in this area of functioning.

With regard to moving about and manipulating objects, the ALJ also found Aaliyah had no limitations. (Tr. 17). The ALJ noted plaintiff's testimony that Aaliyah had recently learned to walk. (Tr. 151). Additionally, plaintiff indicated that Aaliyah was able to feed herself using her fingers. (Tr. 151). Further, we note, as the ALJ did, that plaintiff made no allegations to support a finding that Aaliyah suffered from an impairment that limited her gross or fine motor skills. Therefore, based on this evidence, we conclude that the ALJ properly determined that Aaliyah had no limitations with regard to her ability to move about and manipulate objects.

In addition, the ALJ found that Aaliyah had no limitations in her ability to care for herself. (Tr. 17). As plaintiff has not alleged or presented any evidence regarding limitations in this area, we agree with the ALJ's finding.

Finally, with regard to health and physical well-being, the ALJ found Aaliyah had less than marked limitations. (Tr. 17). The ALJ noted that Aaliyah had undergone surgery for a tracheoesophageal fistula and for a umbilical and ventral hernias. However, he concluded that the medical records showed that Aaliyah had recovered "quite well." The records do make clear that A.F.'s condition had improved. Since the surgery to repair her fistula, Aaliyah had been eating well. In fact, at ten months old, she was quite large for her age, weighing over twenty-eight pounds. Thus, although plaintiff and others testified that Aaliyah had issues with reflux and vomiting, the medical records do not reveal this to be as severe as alleged. (Tr. 156, 162, 165). Doctors have prescribed medication to treat her reflux symptoms, but her condition has not warranted hospitalization or further surgical procedures.

Additionally, Aaliyah's records indicate that she has been treated for a cough and congestion on a few occasions, but has been treated for bronchitis only once. (Tr. 110, 134, 148). There is nothing in the record to show that she has a chronic or disabling condition related to her lungs. Chest x-rays have repeatedly been clear. (Tr. 80, 99, 112). Therefore, substantial evidence supports the ALJ's finding that Aaliyah has moderate, but less that marked limitations in the area of heath and physical well-being.

## III. Conclusion:

Based on the forgoing, we find there is substantial evidence to support the ALJ's determinations with respect to the six domains. Accordingly, we conclude there is substantial

evidence supporting the ALJ's determination that Aaliyah's impairments do not medically or functionally equal any listed impairment.

DATED <u>16th</u> this day of June 2006.

<u>/s/ Bobby E. Shepherd</u>
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)